# IN THE COURT OF APPEALS OF IOWA

No. 24-0557
Filed April 9, 2025

**NEWREZ, LLC d/b/a SHELLPOINT MORTGAGE SERVICING,**
  Plaintiff-Appellee,

**vs.**

**SHELLY D. SHOLLEY,**
  Defendant-Appellant,

**and**

**LVNV FUNDING, LLC, UNKNOWN SPOUSE OF SHELLY SHOLLEY, LF NOLL, INC., HAMILTON'S FUNERAL HOME, INC., ALL UNKNOWN HEIRS OF DIANNE HANSEN, LINDA LEETE, UNKNOWN SPOUSE OF LEE ANN SIDERS, STATE OF IOWA DEPARTMENT OF REVENUE, PARTIES IN POSSESSION, CALVARY SPV I, LLC, THE ESTATE OF LEE ANN SIDERS,**
  Defendants,

**and**

**IGNACIO HERNANDEZ,**
  Third-Party-Defendant.
_____

Appeal from the Iowa District Court for Polk County, Samantha Gronewald, Judge.

A petitioner appeals the district court ruling dismissing her petition to vacate a judgment. **AFFIRMED.**

Robb D. Goedicke of Neighborhood Law Group of Iowa, West Des Moines, for appellant.

Rodney W. Kleitsch, West Des Moines, for appellee.

Considered without oral argument by Tabor, C.J., and Ahlers and Sandy, JJ.

**SANDY, Judge.**

This appeal provides a refresher course on the Iowa Rules of Civil Procedure. Newrez LLC, doing business as Shellpoint Mortgage Servicing (Shellpoint), held a mortgage on a home in Des Moines owned by Shelly Sholley. After Sholley missed months of payments on the mortgage, Shellpoint successfully petitioned to foreclose and received an in rem judgment. The property was then sold via a sheriff's sale.

Sholley subsequently petitioned to vacate the judgment, arguing she had not received proper notice of the foreclosure proceedings and had been defrauded by Shellpoint. Shellpoint moved to dismiss Sholley's petition because it had never been served original notice—signed by the clerk and under the seal of the court—within the timeline provided by the rules of civil procedure. The district court agreed with Shellpoint and dismissed the petition for Sholley's failure to properly serve Shellpoint with original notice in a timely manner.

Because we find the district court properly dismissed Sholley's petition to vacate for failure to properly serve Shellpoint with original notice—signed by the clerk and under the seal of the court—in a timely manner, we affirm.

**I. Background Facts and Proceeding Facts**

In 2001 Lee Ann Siders (Sholley's aunt) purchased a home in Des Moines. To finance the purchase, Siders executed a promissory note that was secured by a mortgage. The mortgage repeatedly changed hands over the years but was eventually assigned to Shellpoint. The home has also changed hands several times throughout the years. Siders passed away in 2012. A probate action was then initiated, which resulted in the home being conveyed to Dianne Hansen

(Sholley's mother) via a court officer's deed in 2016. Hansen assumed the mortgage. In 2019, the home was conveyed via a quit claim deed to Sholley. Sholley did not assume the mortgage.

Despite not assuming the mortgage, Sholley frequently made payments toward the underlying debt. However, these payments ceased in March 2021. At the time Sholley stopped making payments, there remained an unpaid principal balance of $36,008.55 on the mortgage. After months of missed payments on the underlying debt, Shellpoint filed a petition to foreclose the mortgage and requested an in rem judgment in June 2022. Sholley never filed a response to the petition and did not otherwise participate in the foreclosure proceedings. Because Sholley failed to participate in the foreclosure proceedings, Shellpoint filed a motion for default judgment. The district court subsequently issued a ruling finding Sholley to be in default and granted Shellpoint's requests for foreclosure and an in rem judgment.

The property was scheduled to be sold via a sheriff's sale during the summer of 2023. However, the proceedings were stayed because Sholley filed for bankruptcy in federal court. *See* 11 U.S.C. § 362 (providing that an individual filing for bankruptcy in federal court operates as automatic stay of judicial proceedings filed prior to bankruptcy action).[1] Sholley's bankruptcy action was eventually dismissed, and the district court entered an order lifting the stay and permitting Shellpoint to proceed with a sheriff's sale.

---

[1] During a later-held hearing, Sholley explained that she filed for bankruptcy in federal court on the advice of a Shellpoint employee because she was told it would halt the foreclosure proceedings. Shellpoint denies that one of its employees advised Sholley to file for bankruptcy.

The property was sold via a sheriff's sale to Ignacio Hernandez for $75,000 on October 3, 2024. That same day, Hernandez filed for a writ of removal and possession, which was granted by the district court. A day later, Sholley filed a petition to vacate the judgment and stay the execution of the writ of removal and possession. In her petition, Sholley asserted she was never properly served. She also alleged Shellpoint "was regularly taking monthly payments" from her, "including after the entry of judgment."

The district court held a hearing on Sholley's petition to vacate on October 6. Sholley and Shellpoint both participated in this hearing. Shellpoint was represented by its attorney Andrea Dyer. During the hearing, the district court heard testimony from Sholley. In her testimony, Sholley explained that she had been in contact with Shellpoint throughout the foreclosure proceedings. According to her, Shellpoint consistently indicated it was not going to move forward with foreclosure. As she testified, "I've been making payments, and I was supposed to be getting them—the modification of the loan and it would be like you have one point of contact, 2.5 percent interest kind of thing."

Sholley also admitted she was behind on the mortgage payments and added:

I was behind a couple [of months] because I was going through a third party. I would send the money and then they would take it and send it to Shellpoint and they would give me a receipt of when Shellpoint actually acknowledged that they received it. So all of a sudden about that time, one of the payments, like, the month, you know, at the end of the month, it comes back to me, and I called them and asked them why I got that money, and they said well, you know, you can see that we got it. We have the cash. We got them the cash. They accepted it, and then two weeks later they turned around and sent the same amount back to us and said to give it back to you.

Additionally, Sholley testified that she continued to make payments on the mortgage up until October 2023—more than seven months after Shellpoint received the in rem judgment.

Following the hearing, the district court entered an order staying the writ of removal and possession. The district court noted that Sholley's allegations, if true, "could constitute fraud that would result in the judgment being vacated." As part of the order, the district court directed Sholley to file an amended petition to vacate the judgment "specifying the current allegations." Sholley was ordered to promptly serve Hernandez with the amended petition. However, in the order, the district court did not provide a deadline for Sholley to file the amended petition and serve Hernandez. To address this omission, Shellpoint filed a motion to enlarge, requesting that the district court provide a deadline for filing of the amended petition and its service. The district court granted this motion and ordered Sholley to file the amended petition "not later than 10/21/23 and serve the same on [] Hernandez not later than 10/31/23."

Sholley filed an amended petition on October 23. However, she was unable to serve Hernandez with the amended petition and original notice by the district court's October 31 deadline. Sholley then filed a motion for service by alternate means, alleging Hernandez had told her attorney that he would not disclose his address. This motion was denied by the district court. However, due to Hernandez's refusal to provide an address for service, the district court granted Sholley additional time to effect service on him.

As for service of Shellpoint, two affidavits of service were filed with the district court indicating service of the amended petition and original notice had

been carried out on November 10. The first affidavit asserted the amended petition and original notice were served on Linna Baccam at Corporation Service Company—the purported registered agent for Shellpoint. The second affidavit provided that a copy of the amended petition and original notice were served on Danielle Landals of Southlaw, P.C.—the law firm representing Shellpoint.

In February 2024, Shellpoint filed a motion to quash service and dismiss Sholley's petition to vacate. In its motion, Shellpoint asserted "Linna Baccam is not, and was not, an employee of Corporation Service Company." Shellpoint added that Baccam was an employee of Southlaw, P.C., which wasn't authorized to accept service on its behalf. As for the purported service of the amended petition and original notice on Danielle Landis, Shellpoint claimed "[t]here is no individual named Danielle Landis employed by Southlaw, P.C." Additionally, Shellpoint contended "Sholley failed to provide original notice signed by the clerk and under of the seal of the clerk."

The district court held a hearing on Shellpoint's motion to quash service and dismiss on March 1.[2] During the hearing, Shellpoint argued:

> Your honor, my client still has not been served with an original notice in this action. Original notices are distinct from other types of filings in that the Iowa Rules specifically provide for the manner in which they are to be served.
>     In Iowa Rule of Civil Procedure 1.305, it provides for manner of service. No provision is made for service through EDMS. Indeed, the Iowa Rules of Electronic Procedure plainly recognize a distinction between service of original notice and other documents at Rule 16.315, which only provides for electronic service of documents subsequent to original notice.

---

[2] Sholley admitted she did not serve Shellpoint with original notice signed by the clerk and under the seal of the court within ninety days of the filing of the amended petition during the hearing.

> Service of original notice is an absolute requirement to proceed with a petition to vacate judgment under Rule 1.1013(2), which states in pertinent part, quote, The petitioner must serve the adverse party with an original notice and petition in the manner provided for in Rules 1.301 through 1.315, end quote.
>
> There is no gray area here. This is plain language, [an] absolute requirement to proceed with the petition to vacate. The petitioner must serve the adverse party with an original notice. Not may serve, not should serve, must serve. The bottom line is, if this hasn't been done, the Court doesn't have jurisdiction to proceed further with the case.

Following the hearing, the district court issued its ruling dismissing Sholley's petition to vacate. In reasoning that dismissal was appropriate, the district court stated Iowa Rule of Civil Procedure 1.302(2) "provides that the original notice *shall* be signed by the clerk and under the seal of the court." The district court added, "as it is undisputed that Mrs. Sholley has not served [Shellpoint] with an Original Notice consistent with Iowa R. Civ. P. 1.302(2), [Shellpoint's] Motion must be GRANTED." Sholley's petition was dismissed without prejudice.

Sholley now appeals.

## II. Standard of Review

"We review a district court's ruling on a motion to dismiss for the correction of errors at law." *Nahas v. Polk Cnty.*, 991 N.W.2d 770, 775 (Iowa 2023) (citation omitted). "The court may consider matters outside the pleadings where, as here, certain undisputed facts arose after [the party] filed [their] petition, and the issues before the court do not concern the adequacy of the petition to state a claim for relief." *Brubaker v. Est. of Delong*, 700 N.W.2d 323, 326 (Iowa 2005).

## III. Analysis

On appeal, Sholley argues the district court erred in dismissing her petition to vacate because the court cited "a *criminal* case" to support its interpretation of

the word "shall," as used in Iowa Rule of Civil Procedure 1.302(2). In doing so, Sholley contends the district court "overlooked well-established case law in *civil* matters." Sholley also claims Shellpoint waived any defects in service of original notice because it "appeared via counsel and participated in a hearing concerning the allegations set forth in her Petition to vacate." She also notes Shellpoint filed a motion following the October 6 hearing. Sholley believes this amounted to a general appearance and thus waived any defects with service of original notice. Lastly, Sholley argues the district court's dismissal of her petition for failure to properly serve original notice was "draconian" and overlooked "long standing policy in our state favoring the resolution of legal disputes on the merits." We disagree on each point.

"An original notice is the formal writing, issued by authority of law, for the purpose of bringing defendants into court to answer [a] plaintiff's demands in a civil action." *Jacobson v. Leap*, 88 N.W.2d 919, 921 (Iowa 1958). In petitioning for vacating or modifying a judgment, "[t]he petitioner must serve the adverse party with an original notice and petition in the manner provided in rules 1.301 through 1.315." Iowa R. Civ. P. 1.1013(2). "The original notice shall be signed by the clerk and under the seal of the court." *Id.* r. 1.302(2). Our rules make the filing party "responsible for service of an original notice and petition within the time allowed under rule 1.302(5)." *Id.* r. 1.303(3). Iowa Rule of Civil Procedure 1.302(5) provides that:

> If the service of the original notice is not made upon the defendant, respondent, or other party to be served within 90 days after filing the petition, the court, upon motion or its own initiative after notice to the party filing the petition, shall dismiss the action without prejudice as to that defendant, respondent, or other party to be served or direct

an alternate time or manner or service.  If the party filing the papers shows good cause for the failure of service, the court shall extend the time for service for an appropriate period.

The use of the word "shall" in rule 1.302(2) and (5) is fatal to Sholley's first argument.  We generally interpret the Iowa Rules of Civil Procedure in the same manner we interpret statutes.  *See Fisher v. Davis*, 601 N.W.2d 54, 60 (Iowa 1999) ("Rules have the force and effect of statutes.  Consequently, we interpret rules in the same manner we interpret statutes." (internal citations omitted)).  And our courts have consistently interpreted the word "shall" in statutes to imply a mandatory duty.  *See In re Marriage of Thatcher*, 864 N.W.2d 533, 539 (Iowa 2015) ("In a statute, the word 'shall' generally connotes a mandatory duty." (citation omitted)).

Thus, reading the applicable rules together, we conclude a petition to modify or vacate a judgment and original notice—signed by the clerk and under the seal of the court—must be served on an adverse party within ninety days of the filing of the petition.  In other words, if a petitioning party serves original notice on an adverse party that is not signed by the clerk and under the seal of the court, they have failed to properly serve original notice under the rules.  *See* Iowa R. Civ. P. 1.302(2), (5).  And failure to serve original notice on an adverse party within the ninety-day timeline prescribed by rule 1.302(5)—absent a showing of good cause—is a well-recognized ground for dismissal.  *See Brubaker*, 700 N.W.2d at 326 ("Rule 1.302(5) requires the court to dismiss an action without prejudice for the untimely service of original notice."); *see also Wang v. Baumgartner*, No. 18-0926, 2019 WL 1055857, at *3 (Iowa Ct. App. Mar. 6, 2019) (affirming the district court's dismissal of a petition for failure to properly serve original notice in

compliance with rule 1.302(5)). Sholley makes no attempt to establish good cause for her failure to timely serve Shellpoint with proper original notice.[3] Accordingly, we find the district court did not err by dismissing her petition to vacate the judgment on this ground.

We also cannot conclude that Shellpoint waived any defects in service of original notice by participating in the October 6 hearing on Sholley's petition and filing a motion after that hearing. In support of her argument on this point, Sholley cites *Lonning v. Lonning*, a case in which our supreme court concluded the filing of an answer by a mother in a child custody modification action waived any claimed notice defects. 199 N.W.2d 60, 62 (Iowa 1972) (finding a filing of an answer by the mother's attorney "was a general appearance obviating the necessity of notice and subjecting the mother personally to district court jurisdiction").[4]

But more recently, our supreme court has indicated an adverse party may participate in the underlying litigation—to some extent—without waiving challenges to service defects. *See Antolik v. McMahon*, 744 N.W.2d 82, 83–84 (Iowa 2007) (concluding an adverse party is not required to challenge a notice defect in a pre-answer motion and may "raise the defense in a pre-answer motion, a responsive pleading, or a motion for summary judgment."); *see also* Iowa R. Civ.

---

[3] Sholley filed her amended petition on October 23, 2023. Ninety days from October 23 would have been January 21, 2024—a Sunday. Thus, Sholley had until January 22 to serve Shellpoint with original notice. *See* Iowa Code § 4.1(34).
[4] Sholley argues that *Lonning* stands for the proposition that the filing of a pleading waives challenges to insufficient notice or service of process. Thus, because Shellpoint filed a motion to enlarge a district court order issued shortly after the October 6 hearing, she believes Shellpoint waived any challenges to defects in the service of original notice. However, there is one problem with this argument. Motions do not count as pleadings. *State v. LePon*, No. 18-0777, 2019 WL 2369887, at *14 (Iowa Ct. App. June 5, 2019) ("Motions are not pleadings.").

P. 1.455 (providing that a challenge to insufficiency of service of process may be "made in a pleading or by motion" and "shall be determined before trial."). And we have rejected a similar argument that an adverse party waives challenges to original notice service defects by simply appearing and participating in the lawsuit. *See Merchant v. Wilson*, No. 20-1465, 2022 WL 468753, at *3 (Iowa Ct. App. Feb. 16, 2022) (rejecting a plaintiff's argument that the defendant waived challenges to defects in the service of original notice by appearing at several court hearings because the defendant was free to object to notice defects "in a later filing"). Therefore, we find Shellpoint did not waive challenges to defects in service of original notice by filing a motion to enlarge and participating in several court hearings related to Sholley's petition to vacate.

In a last-ditch effort to save her petition, Sholley contends the district court's dismissal of her petition due to her failure to serve Shellpoint with original notice signed by the clerk and under the seal of the court was "draconian." She argues the district court's ruling ignores a well-settled policy of our courts to decide cases on the merits. Sholley is correct that our courts generally favor deciding cases on the merits. *See Toney v. Parker*, 958 N.W.2d 202, 210 (Iowa 2021) ("We recently reiterated that 'there is a longstanding policy in our state favoring the resolution of legal disputes on the merits.'" (citation omitted)).

However, we believe the district court was obligated to follow the clear directive that a petition to vacate must be dismissed if original notice—signed by the clerk and under seal of the court—is not served on the adverse party within ninety days of the petition's filing. *See* Iowa R. Civ. P. 1.302(2), (5). We cannot

ignore the plain language of the rules of civil procedure. As our supreme court long ago said:

> We cannot, however, ignore a clear statutory requirement to achieve what appears to be the best result in a particular case. Such action almost always makes bad law. . . . "The so-called technicalities of the law are not always what they seem. When they establish an orderly process of procedure, they serve a definite purpose and are more than technical; they have substance, in that they lay down definite rules which are essential in court proceedings so that those involved may know what may and may not be done, and confusion, even chaos, may be avoided. They are necessary; without them litigants would be adrift without rudder or compass."

*Krebs v. Town of Manson*, 129 N.W.2d 744, 748 (Iowa 1964) (quoting *Esterdahl v. Wilson*, 110 N.W.2d 241, 246 (Iowa 1961)). Further, "[t]he failure to timely serve original notice cannot be deemed a minor or technical error even where the defendant has actual notice of the petition." *Dewit v. Madison Cnty. Zoning Bd.*, No. 16-1746, 2017 WL 4049508, at *4 (Iowa Ct. App. Sept. 13, 2017). Accordingly, we cannot find the district court erred in dismissing the petition on this ground.

For the foregoing reasons, we conclude the district court did not err in dismissing Sholley's petition to vacate.

## IV. Conclusion

Because we find the district court did not err in dismissing Sholley's petition for failure to timely serve original notice—signed by the clerk and under the seal of the court—we affirm.

**AFFIRMED.**